IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOSEPH A. MORELLO               :   CIVIL ACTION
                                  :
           v.                   :
                                    :   NO.  09-4412
KENCO TOYOTA LIFT, et al.        :

KEARNEY, J.                                                October 8, 2015

## MEMORANDUM

Plaintiff seeks damages due to an injury caused by a forklift hitting him while operating in reverse in his workplace.   Courts have long analyzed whether machinery with optional safety accessories is defective for failing, as a design matter, to include the optional safety accessories as standard on all machines.   We now address whether a forklift seller can be liable for injuries in negligence, strict liability or breach of warranty caused by an industrial forklift which did not include safety accessories such as lights or noises when operating the forklift in reverse.   After discovery, we find no duty upon a machinery seller to educate and inform a manufacturing buyer as to optional safety devices, no claim for strict liability under §402B, no claim under Restatement (Torts) §392, and no claim for breach of an express warranty or implied warranty of fitness for a particular purpose.   We find genuine issues of material fact precluding summary judgment, subject to our review of the admissibility of Plaintiff's proffered expert testimony, as to whether the forklift is defectively designed upon manufacture because it does not always include these safety features while operating the forklift in reverse.

## I.  UNDISPUTED MATERIAL FACTS[1]

In 2006, as part of a pattern of purchases over years, Defendants Kenco Toyota Lift, Kenco Group individually and d/b/a Kenco Toyota Lift, and Kenco Material Handling Solutions, LLC ("Kenco") sold a forklift to Jet Plastica, a manufacturer of plasticware.  (Kenco SUMF at ¶40).  Third Party Defendant Toyota Industrial Equipment Manufacturing ("TIEM") manufactured the forklift sold by Kenco to Jet Plastica. (TIEM's SUMF at ¶9).[2]  Jet Plastica did not purchase optional safety accessories such as rear view mirrors, backup alarms, and rear strobe lights automatically operational when operating in reverse.

Plaintiff Joseph Morello ("Morello") worked for Jet Plastica. (Kenco SUMF at ¶1).  On July 26, 2007, while working in Jet Plastica's warehouse, Morello sustained injury to his left leg when a forklift driven by a co-worker struck him. (Kenco SUMF at ¶¶61, 62, 78).

## II.  ANALYSIS

Morello seeks damages against Kenco for negligence (Count I), strict liability under Restatement (Second) of Torts §402A (Count II), strict liability under Restatement (Second) of

---

[1]   These limited recited facts are the only material facts agreed by the parties to be undisputed. The parties disagree about the injury, timing, reliance and a wide variety of facts relating to Kenco's purchase decision. For purposes of summary judgment, we review the undisputed material facts and determine, as a matter of law, whether Morello can proceed to trial.  The Court's Policies require that a Statement of Undisputed Material Facts ("SUMF") be filed in support of a Fed.R.Civ.P. 56 motion as well as an appendix of exhibits or affidavits.  Kenco filed its SUMF at ECF Doc. No. 135-1 ("Kenco SUMF"). Kenco's Appendix is filed at ECF Doc. No. 135-3 through 135-22. Morello responded to Kenco's SUMF and, within that response, included "Additional Facts Which Preclude Summary Judgment" at ECF Doc. No. 142-2, referred to as "Morello's SUMF." Morello's Appendix is filed at ECF Doc. No. 142-4 through 142-24. References to exhibits in the appendices shall be referred to by Bates number, for example, "1a."

[2]   TIEM moved for summary judgment on Kenco's Third Party Complaint (ECF Doc. No. 134). In accordance with the Court's Policies, TIEM filed a Statement of Undisputed Material Facts in support of its motion (ECF Doc. No. 134) and Appendix (ECF Doc. No. 134-1, 134-2).

Torts §402B (Count III) [3], "Liability Under Restatement (Torts) §392" (Count IV)[4], breach of

express warranty (Count V), breach of implied warranty of merchantability (Count VI), and

breach of implied warranty and fitness for a particular purpose (Count VII). *See* Amended

Complaint (ECF Doc. No. 16). Kenco now moves for summary judgment on Morello's

Amended Complaint (ECF Doc. No. 135).[5]

---

[3]  Section 402B – "Misrepresentation by Seller of Chattels to Consumer" – provides:

> One engaged in the business of selling chattels who, by advertising, labels, or otherwise, makes to the public a misrepresentation of a material fact concerning the character or quality of a chattel sold by him is subject to liability for physical harm to a consumer of the chattel caused by justifiable reliance upon the misrepresentation, even though
>
> (a) it is not made fraudulently or negligently, and
>
> (b) the consumer has not bought the chattel from or entered into any contractual relation with the seller.

Restatement (Second) of Torts §402B.

Section 402B applies to a seller who "makes to the public a misrepresentation of a material fact concerning the character or quality of a chattel sold by him . . .." *Id.* "The rule applies only to misrepresentations of 'material facts' and only where there has been 'justifiable reliance' on the misrepresentation." *Wolfe v. McNeil-PPC, Inc.*, 773 F.Supp. 2d 561, 573 (citing Restatement (Second) of Torts §402B, comments g, j); *see also Thorpe v. Bollinger Sports, LLC*, No. 14 - 4520, 2015 WL 5299614 at *3-*4 (E.D. Pa. Sept. 9, 2015). Kenco moves for summary judgment on Morello's §402B claim, but did not fully brief the argument. Morello's brief in opposition does not address the §402B claim nor did he argue this claim at oral argument. We consider this claim abandoned and summary judgment is granted in favor of Kenco on the §402B claim (Count III). Further, Morello did not show any misrepresentation of material fact concerning the character or quality of the forklift.

[4]  Morello's Opposition does not address Kenco's summary judgment argument on this claim. *See* Morello's opposition brief at ECF Doc. No. 142-3. At oral argument, Morello admitted his claim under §392 "may not" apply here, explaining "complaints are filed prior to their engaging in discovery." *See* Oral Argument Transcript ("T.") at 83. Without briefing or argument, we find Morello abandoned this claim.

[5]  Summary judgment is proper when there is no genuine dispute of material fact and the movant is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(a). A dispute as to a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving

## A. Kenco has no legally recognized duty to Morello.

Kenco moves for summary judgment on Morello's negligence claim. We initially determine whether Kenco owed a duty of care to Jet Plastica, and ultimately to Morello, in selling this Toyota forklift without the optional safety accessories.[6] Whether a defendant owes a duty of care to a plaintiff is a question of law in Pennsylvania. *Kleinknecht v. Gettysburg Coll.*, 989 F.2d 1360, 1366 (3d Cir.1993).

"Generally, to state a cause of action for negligence, a plaintiff must allege facts which establish the breach of *a legally recognized duty or obligation of the defendant* that is causally connected to actual damages suffered by the plaintiff." *Scampone v. Highland Park Care Center, LLC*, 57 A.3d 582, 596 (Pa. 2012) (citation omitted) (emphasis added); *see also Althaus ex rel. Althaus v. Cohen*, 756 A.2d 1166, 1168 (Pa. 2000) ("The primary element in any negligence cause of action is that the defendant owes a duty of care to the plaintiff.") "If the law does not impose a duty on defendants to act under a certain set of circumstances, a claim for negligence will not survive." *Karpf v. Massachusetts Mut. Life Ins. Co.*, No. 10-1401, 2014 WL 1259605, at

---

party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). On a motion for summary judgment, the court must consider the "underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Slagle v. Cnty. of Clarion*, 435 F.3d 262, 264 (3d Cir. 2006) (citations omitted). If the movant carries its initial burden of showing the basis of its motion, the burden shifts to the non-moving party to go beyond the pleadings and point to "specific facts showing that a genuine issue exists for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). In other words, the non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (citation and internal quotation marks omitted). Summary judgment must be granted against a non-moving party who fails to sufficiently "establish the existence of an essential element of its case on which it bears the burden of proof at trial." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014).

[6] To establish negligence under Pennsylvania law, "the plaintiff must demonstrate that the defendant owed a duty of care to the plaintiff, the defendant breached that duty, the breach resulted in injury to the plaintiff, and the plaintiff suffered an actual loss or damage." *Martin v. Evans*, 711 A.2d 458, 461 (Pa. 1998).

*7 (E.D. Pa. Mar. 27, 2014) (citation omitted). A duty may arise from common law, statute, or contract. *Id.; see also DeJesus v. U.S. Dept. of Veterans Affairs*, 479 F.3d 271, 280-81 (3d Cir. 2007) (citation omitted) ("In all tort cases, a duty may be imposed either through common-law case development or through statute.")

Morello asserts the duty arises from Kenco's sales representative William Powell visiting Jet Plastica's warehouse prior to the sale to "observe and assess" Jet Plastica's operation and, during this visit became "aware" forklifts would be operated in reverse necessitating rear view mirrors, backup alarms, and rear strobe lights (collectively "safety accessories"). Morello Opposition at 16 (ECF Doc. No. 142-3). Morello then defines Kenco's duty as one to "educate and inform the buyer that in light of the application and environment at Jet Plastica, the forklifts should have the required backup alarms, strobe lights and side view mirrors in order for the product to be safe . . .." *Id.* at 18.

Morello conceded at oral argument he cannot "cite to a specific case" imposing a common law duty of a seller to "educate and inform" a buyer. T. at 20-21. Morello does not cite a statute or contractual duty imposing a duty on Kenco to "educate and inform" a forklift or machinery buyer. Nevertheless, Morello urges us to recognize such a duty based on industry standards and deposition testimony of Kenco sales representative William Powell who, Morello contends, admitted he had a duty to educate customers such as Jet Plastica on safety accessories. *See* Morello Opposition at 13-19 (ECF Doc. No. 142-3).

Morello relies on the industry standard opinions of his proffered experts Robert Loderstedt and Vincent Gallagher.[7] Mr. Loderstedt opined Kenco "failed to comply with industry standards and practices to communicate and educate Jet Plastica of the necessary safety

---

[7]   Morello relied on Loderstedt's opinion in his Opposition brief and on Gallagher's opinion at oral argument.

items which were required to make the forklifts safe at Jet Plastica which would include" safety

accessories and "violated industry standards and industry practices by failing to communicate the

pros and cons of having the required safety items . . . as part of the necessary safety equipment

with respect to the environment at Jet Plastica." Appendix ("A.") at 1342a. Gallagher opined

safety accessories "while not required by OSHA when manufactured are recognized safety

devices which reduce the risk of workers being run over by forklift trucks and are both

economically and technologically feasible" and "while OSHA does not require these safety

devices when manufactured, the need for backup alarms on forklift trucks has been recognized

by many industry safety authorities and standard-setting organizations." A. at 1372a.

As Judge McLaughlin found in an earlier opinion:

> Although industry standards are admissible evidence in negligence cases,
> they do not have bearing on the issue of whether a duty was owed; rather,
> industry standards are admissible on the issue of the standard of care.
> *Norton v. Ry. Exp. Agency, Inc.*, 412 F.2d 112, 114 (3d Cir.1969).
> *Industry standards cannot be used to create a duty when none would
> otherwise be owed. See id.; see also Dallas*, 552 A.2d at 1113 (holding
> that an industry standard was a question for the finder-of-fact because the
> trial court had accurately stated the duty owed).

*Morello v. Kenco Toyota Lift*, No. 09-4412, 2015 WL 1400582, *3 (E.D. Pa. Mar. 26, 2015)

(emphasis added).[8]

Morello relies on William Powell testifying his job as a Kenco salesman includes

"educat[ing] customers with respect to safety features" on forklifts and "discuss[ing] with

customers the different safety features that Toyota offered which would make the forklift safe for

---

[8] On July 22, 2015, the Honorable Chief Judge Petrese B. Tucker reassigned this case from
Judge McLaughlin to our calendar (ECF Doc. No. 126). In an earlier ruling in this matter, Judge
McLaughlin granted the motion for summary judgment of defendant Lift Truck Technologies,
Inc. ("LTT"), a provider of forklift repair services, on Morello's negligence claim (ECF Doc.
No. 113). Judge McLaughlin found LTT had no duty to recommend safety features to Jet
Plastica and, therefore, could not be liable in negligence.

a particular application." A. at 1429a.[9]   Morello then argues Powell's sales techniques creates a

duty to Jet Plastica citing *Kordek v. Becton, Dickinson & Co.*, 921 F.Supp.2d 422 (E.D. Pa.

2013). In *Kordek*, the plaintiff surgical technician was injured when removing the shield from a

scalpel and sued the manufacturer for negligence and products liability. *Kordek*, 921 F.Supp.2d

at 424. The court granted defendant manufacturer's motion for summary judgment on strict

liability and negligence claims. *Id.* at 433-34. The court found plaintiff's relationship to the

manufacturer one of a "foreseeable consumer of the product, which would likely be sufficient to

---

[9]   Morello also cites testimony of Timothy Agnew, Kenco's General Manager and Powell's supervisor, to support his argument Kenco "acknowledged the duties and responsibilities which Kenco owed to the buyer/customer." *Id.* Morello calls our attention to Mr. Agnew's testimony:

> Q. Are there certain applications in which backup alarms would be a safety
> feature that should be included on a particular forklift?
> [Objections]
> Q. If you know.
> A. I think it's a matter of opinion. Any operation.
> Q. I don't understand your answer. Is it your opinion that a backup alarm
> should be on every operation?
> A. We offer it. I have all my salespeople offer it in every operation.
> Q. With respect to your involvement in the material handling industry, that
> every forklift that is sold should be sold with a backup alarm?
> [Objections]
> A. It is our standard that we offer it and let the customer decide.
> Q. As part of the policies, practices and procedures of Kenco, do they train
> and instruct their salesmen to explain the pros and cons and benefits of backup
> alarms?
> A. Yes.

A. at 1407a-1408a.

Contrary to Morello's argument, this passage does not evidence Kenco "agrees that backup alarms should be on every forklift," "consistent with the reporting of Plaintiff's experts." *See* Morello SUMF at ¶105. Mr. Agnew did not testify "backup alarms should be on every forklift." Agnew testified Kenco's sales representatives offer backup alarms and "let[s] the customer decide." A. at 1407a. Mr. Agnew's testimony does not evidence, or create, a legal duty on Kenco to "educate and inform" Jet Plastica, and Morello cites no case supporting his argument.

establish a duty of care" and "defendant concedes in its reply that [manufacturer] owes a duty of care" to plaintiff. *Id.* at 433. *Kordek* is distinguishable. The court did not analyze whether a duty existed; instead it focused on whether the manufacturer breached its duty, relying on the manufacturer's concession it owed a duty of care. *Id.* at 433-34. Here, Kenco does not concede it owes a duty. Instead, a sales representative testified as to his view of job duties to "educate" and "discuss" with customers available safety devices. This sales technique does not create a legally cognizable duty as a matter of law and Morello cites no authority for his argument.

Morello cannot cite, nor can we find, any authority under Pennsylvania law to impose a duty on a seller to "educate and inform" an individual buyer regarding safety accessories. Imposing such a far reaching duty to have machinery salespersons educate their potential manufacturing consumers would potentially turn salespeople into quasi-fiduciaries. Under Morello's theory, machinery salespeople would need to not only know, but also anticipate, a wide range of conduct in their buyer's dynamics based largely on speculation. We also question whether such a duty is appropriate in the commercial context where the seller and buyer are presumably adverse, or have conflicting goals: the seller wants to maximize the return and the buyer wants to lower the cost. Under Morello's proffered duty, machinery salespersons would be both consultants to the buyer and agents of the seller.[10] Further, we cannot discern the scope of

---

[10] We additionally reject Morello's argument Kenco "rendered its services negligently" under the Restatement (Second) of Torts §324A. *See* Morello Opposition at 19-21 (ECF Doc. No. 142-3). As an initial matter, Morello failed to argue this theory of negligence at oral argument. In his briefing, Morello relies heavily on *Farabaugh v. Penn. Turnpike Comm'n*, 911 A.2d 1264 (Pa. 2006). In *Farabaugh*, the Pennsylvania Supreme Court recognized §324A allowing a "cause of action sounding in tort based upon a defendant's negligent performance of contractual obligations owed to another party." *Id.* at 1277. In *Farabaugh*, the court allowed a §324A claim to go forward, finding questions of fact on the issue of whether the defendant construction manager breached its duty to perform its contractual obligations in a manner that would not injure plaintiff's decedent worker on a construction site. *Id.* at 1284. The court found the defendant construction manager "owed a duty to perform its safety obligations under its contract

8

agency liability for the seller unless the buyer and seller were to write, or audiotape, their entire negotiation. In this instance, the relationship would be closer to a breach of express warranty claim where the sale of every piece of machinery would be accompanied by a series of representations as to all possible risks attendant to the machinery. We decline to impose such a duty under negligence law.

## B. Genuine issues of material fact preclude summary judgment on Morello's products liability claim under Restatement (Second) of Torts §402A.

Morello also seeks recovery in strict liability under the Restatement (Second) of Torts §402A. Section 402A imposes liability on a seller "of any product in a defective condition unreasonably dangerous to the user or consumer . . .."[11] Restatement (Second) Torts, §402A; *Tincher v. Omega Flex, Inc.*, 104 A.3d 328, 383 (Pa. 2014). "To prevail in an action under

---

with the [Pennsylvania Turnpike Commission] so as not to injure Decedent." *Id.* We find this section inapplicable as Morello failed to identify, or argue, any element of §324A.

[11] Section 402A provides:

> (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
>
> > (a) the seller is engaged in the business of selling such a product, and
> >
> > (b) it is expected to and does reach the user or consumer without substantial    change in the condition in which it is sold.
>
> (2) The rule stated in Subsection (1) applies although
>
> > (a) the seller has exercised all possible care in the preparation and sale of his product, and
> >
> > (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

Restatement (Second) Torts §402A.

section 402A, the plaintiff must prove that the product was defective, the defect existed when it left the defendant's [manufacturer's] hands, and the defect caused the harm." *Barton v. Lowe's Home Centers, Inc.*, ___ A.3d ___, 2015 WL 5612185, at *3 (Pa. Super. Sept. 24, 2015) (citing *Riley v. Warren Mfg., Inc.* 688 A.2d 221, 224 (Pa. Super. 1997)).[12]

Morello alleges the forklift absent the safety accessories at the point of TIEM's manufacturing is defective in design. Our Court of Appeals recognized cases interpreting §402A "find that a lack of proper safety devices can constitute a defective design which may subject the manufacturer of machinery to liability." *Heckman v. Federal Press Co.*, 587 F.2d 612, 616 (3d Cir. 1978) (citing *Schell v. AMF, Inc.*, 567 F.2d 1259, 1261 (3d Cir. 1977) and *Bartkewich v. Billinger*, 247 A.2d 603, 605 (Pa. 1968)).

Morello argues the jury must decide whether forklifts absent the safety accessories are defectively designed. Morello asserts his experts opine forklifts without back-up alarms and other safety accessories are defective in design. For example, Stephen B. Wilcox, Ph.D., a human factors expert, opines "[t]he Toyota forklift, as sold by Kenco to Jet Plastica, was dangerous and defective in that it had neither auditory nor visual signaling devices and was not equipped with appropriate mirrors." A. at 1327a. Thomas Cocchiola, P.E., opined "Kenco Toyota Lift sold a Toyota 7FBCU15 forklift that was defective because it lacked the safety devices necessary to protect workers from hazardous conditions in the Jet Plastica warehouse." A. at 1316a. Vincent A. Gallagher, Jr. opined although OSHA standards do not require the safety devices at issue, "compliance with OSHA standards is not the sole measure of whether or not an industrial product is reasonably safe;" "[s]ometimes OSHA standards are dangerous;" and "OSHA standards sometimes fail to recognize reasonable hazard controls which are both

---

[12] "The duty in strict liability pertains to the duty of a manufacturer and of suppliers in the chain of distribution to the ultimate consumer." *Tincher*, 104 A.3d at 383.

economically and technologically feasible. In this case, backup alarms, flashing lights and mirrors while not required by OSHA when manufactured are recognized safety devices which reduce the risk of workers being run over by forklift trucks and are both economically and technologically feasible." A. at 1372a.

Under either the consumer expectation or risk-utility standards recently defined by the Pennsylvania Supreme Court in *Tincher*, and considering the public policy concerns forming the basis of strict liability law examined in *Tincher*, we find the issue of whether the lack of safety devices rendered the forklift defective in design is a question of fact for the jury. *Tincher*, 104 A.3d at 335, 407. Considering Morello's expert reports subject to our admissibility evaluation, and as directed by *Tincher*, the question of whether the forklift is in a defective condition may only be "removed from the jury's consideration . . . where it is clear that reasonable minds could not differ on the issue." *Id.*[13] We do not find the defective design issue here meets this standard.

---

[13]    While Pennsylvania has not specifically addressed design defect due to a lack of safety accessories on machinery, we note case law developed under New York law specifically addressing standards applied where "a plaintiff claims a product without optional safety features is defectively designed because the equipment is not standard." *Cardani v. Thompson & Johnson Equip. Co., Inc.*, 16 A.D.3d 1002, 1003 (N.Y.App.Div. 2005). The analysis, articulated in *Scarangella v. Thomas Built Buses*, 717 N.E.2d 679 (N.Y. 1999) instructs:

> We can thus distill some governing principles for cases where a plaintiff claims that a product without an optional safety feature is defectively designed because the equipment was not standard. The product is not defective where the evidence and reasonable inferences therefrom show that: (1) the buyer is thoroughly knowledgeable regarding the product and its use and is actually aware that the safety feature is available; (2) there exist normal circumstances of use in which the product is not unreasonably dangerous without the optional equipment; and (3) the buyer is in a position, given the range of uses of the product, to balance the benefits and the risks of not having the safety device in the specifically contemplated circumstances of *the buyer's* use of the product. In such a case, the buyer, not the manufacturer, is in the superior position to make the risk-utility assessment, and a well-considered decision by the buyer to dispense with the optional safety equipment will excuse the manufacturer from liability. When the factors are not present, there is no justification for departure from the accepted

11

Accordingly, we deny Kenco's motion for summary judgment on Morello's claim under §402A subject to our ruling on Kenco's and TIEM's motions to exclude Morello's experts and reports from trial (ECF Doc. Nos. 148, 149, 150).

### C.  Breach of warranty claims

Kenco moves for summary judgment on Morello's three warranty claims: (1) breach of an express warranty; (2) breach of the implied warranty of merchantability; and (3) breach of the implied warranty of fitness for a particular purpose.

#### a.   Express warranty

Under Pennsylvania law, "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express - warranty that the goods shall conform to the affirmation or promise." 13 Pa.C.S.A. §2312(a)(1).[14]  "[T]o create an express warranty, the seller must expressly communicate the

---

rationale imposing strict liability upon the manufacturer because it "is in the superior position to discover any design defects."

*Scarangella*, 717 N.E.2d at 683 (citation omitted) (emphasis in original).

In *Scarangella*, a school bus struck a school bus driver while being operated in reverse in a bus parking yard. The distributor who sold the bus to the defendant school bus company offered, as an optional safety feature, a back-up alarm that would automatically sound when a driver shifted the bus into reverse gear. The bus company chose not to buy the optional equipment. *Id.* at 680. The plaintiff argued defective design of the bus because it did not have the safety features. After the trial court granted directed verdict, the New York appellate court found plaintiff failed to make a *prima facie* showing the lack of back-up alarms on the bus was a design defect. In light of the Pennsylvania Supreme Court's recent policy analysis in *Tincher,* we will not initially predict whether the Pennsylvania Supreme Court would adopt this New York standard. We decline to predict in this case, because even under the New York standard, there are questions of fact relating to Jet Plastica's reliance, experience and use of the forklift.

[14]  Section 2313 provides:

(a) General rule - Express warranties by the seller are created as follows:

terms of the warranty to the buyer in such a manner that the buyer understands those terms and accepts them." *Goodman v. PPG Indus., Inc.*, 849 A.2d 1239, 1243 (Pa. Super. 2004).

Morello pleads Kenco "described and expressly warranted the forklift, *inter alia*, as being safe for its intended purpose" and "[t]he forklift was used based upon the express warranty made by" Kenco. *See* Am.Compl. at ¶¶ 59-60. However, Morello does not cite evidence to establish the creation of an express warranty.[15] Morello fails to meet his burden on summary judgment to go beyond the pleadings and point to "specific facts showing that a genuine issue exists for trial." *Celotex Corp.* 477 U.S. at 323-24 (1986); *Blunt*, 767 F.3d at 265. Summary judgment is granted in favor of Kenco on Morello's breach of express warranty claim.

---

(1) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

(2) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

(3) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

(b) Formal words or specific intent unnecessary.--It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the opinion of the seller or commendation of the goods does not create a warranty.

13 Pa.C.S.A. §2313.

[15] Morello did not provide argument in opposition to Kenco's motion for summary judgment on the express warranty claim, focusing instead on his implied warranty claims. *See* Morello Opposition at 142-3.

### b. Implied Warranty of Merchantability

Under Pennsylvania law, "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." 13 Pa.C.S.A. §2314(a). For goods to be "merchantable," they must be "fit for the ordinary purposes for which such goods are used." 13 Pa.C.S.A. §2314(b).[16]

> The concept of "merchantability" does not require that the goods be the best quality, or the best obtainable, *but it does require that they have an inherent soundness which makes them suitable for the purpose for which they are designed, that they be free from significant defects*, that they perform in the way that goods of that kind should perform, and that they be of reasonable quality within expected variations and for the ordinary purpose for which they are used.

*Gall by Gall v. Allegheny Cnty. Health Dept.*, 555 A.2d 786, 789-90 (Pa. 1989) (internal citations omitted) (emphasis added).

Morello alleges "[t]he ordinary purpose of the forklift was for moving merchandise in a warehouse" and "[t]he forklift was unfit for the purpose" because it lacked safety accessories. Am.Compl. at ¶¶68-69. Kenco argues the forklift was fit for moving merchandise; the forklifts met Jet Plastica's specifications, the forklifts were used continuously for almost a year before

---

[16] Section 2314(b) provides:

> Goods to be merchantable must be at least such as:
> (1) pass without objection in the trade under the contract description;
> (2) in the case of fungible goods, are of fair average quality within the description;
> (3) are fit for the ordinary purposes for which such goods are used;
> (4) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved;
> (5) are adequately contained, packaged, and labeled as the agreement may require; and
> (6) conform to the promises or affirmations of fact made on the container or label if any.

13 Pa.C.S.A. §2314(b).

14

Morello's accident, Jet Plastica never contended that the lifts were unfit or unsafe for their

intended purpose, and Jet Plastica's internal investigation after the accident confirmed there was

nothing wrong with the forklift that struck Morello.  Kenco's brief at 24 (ECF Doc. No. 135-2).

Based on our analysis of Morello's §402A claim, we find Morello's implied warranty of

merchantability withstands summary judgment.  Considering the testimony of Morello's experts,

we find a question of fact whether the forklift, without the safety accessories, is defective and

thus unfit for its ordinary purpose.  Pennsylvania law construes breach of warranty claims

"within the sphere of products liability actions."  *French v. Commonwealth Assoc.*, 980 A.2d

623, 633 (Pa. Super. 2009).

> Under Pennsylvania law, contract claims for breach of the implied
> warranties of merchantability and fitness for a particular purpose may also
> fall within the sphere of products liability actions. *Williams v. West Penn
> Power Co.*, 502 Pa. 557, 568, 467 A.2d 811, 817 (1983). *See also
> Goodman v. PPG Industries, Inc.*, 849 A.2d 1239, 1245 (Pa.Super.2004),
> *affirmed*, 584 Pa. 537, 885 A.2d 982 (2005) (stating: "Our Supreme Court
> harmonized the rules governing implied warranty claims with the rules
> governing products liability claims, because the two types of actions are
> now substantially similar"). While breach of warranty and products
> liability claims are not coterminous, products liability cases often include
> breach of warranty claims; for example, in cases where the product is
> alleged unsafe for its intended use. *Phillips v. Cricket Lighters*, 584 Pa.
> 179, 188 n. 6, 883 A.2d 439, 445 n. 6 (2005).

*French*, 980 A.2d at 633. *See also, Barton*, 2015 WL 5612185 at *5.[17]

---

[17]   *See* 3 S. Gerald Litvin & Gerald Austin McHugh, Jr., Pennsylvania Practice §9.53 (West
1996) addressing liability for breach of implied warranties and collecting cases:

> Technically, in order to recover, the plaintiff need not prove that a product
> was defective in the same manner required to prevail under a strict liability
> theory. As a practical matter, however, the plaintiff's proof of a breach of
> implied warranty claim will often be the same as proof of a claim litigated
> under § 402A of the Restatement of Torts, Second. *This is so because the
> standard for merchantability approximates that for a defective product and
> in the absence of a product defect, it is unlikely that the product will be
> found to be unmerchantable.* For example in *Wright v. Federal Machine*

Accordingly, summary judgment is denied on Morello's claims for breach of the implied warranty of merchantability (Count VI).

### c. Implied Warranty of Fitness for a Particular Purpose

The warranty for fitness for a particular purpose is "more exacting" than the implied warranty of merchantability. *Altronics of Bethlehem, Inc. v. Repco, Inc.*, 957 F.2d 1102, 1105 (3d Cir. 1992). To establish a breach of an implied warranty of fitness for a particular purpose, Morello must adduce evidence showing "at the time of contracting [the seller] has reason to know: (1) any particular purpose for which the goods are required; and (2) that the buyer is relying on the skill or judgment of the seller to select or furnish suitable goods." 13 Pa.C.S.A § 2315.[18] "A warranty of fitness for a particular purpose is based upon a special reliance by the

---

> *Co., Inc.*, the court held that there could be no liability against the supplier of replacement parts for an industrial machine that caused injury, in the absence of proof that the parts in some way departed from specifications, or were otherwise defective. Similarly, in *Orlando v. Herco, Inc.*, liability was denied to a plaintiff who alleged he had been served spoiled food, where the evidence did not establish that any characteristic of the food served was responsible for the plaintiff's injuries. *On the other hand, as is the case with strict liability under § 402A, if a malfunction occurs, under appropriate circumstances the occurrence itself will suffice to establish that the warranty was breached, because the product was unfit for the purpose for which it was marketed.*

*Id.* (footnotes omitted) (emphasis added).

[18] Section 2315 provides:

> Where the seller at the time of contracting has reason to know:
>
> (1) any particular purpose for which the goods are required; and
>
> (2) that the buyer is relying on the skill or judgment of the seller to select or furnish suitable goods;

16

buyer on the seller to provide goods that will perform a specific use envisaged and communicated by the buyer." *Gall*, 555 A.2d at 790.

There is a dispositive difference between the "particular" and "ordinary" purposes in the implied warranties of fitness for a particular purpose and merchantability:

> A "particular purpose" differs from the "ordinary purpose" for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability and go to uses which are customarily made of the goods in question. For example, shoes are generally used for the purpose of walking upon ordinary ground, but a seller may know that a particular pair was selected to be used for climbing mountains.

*Id.* (citing Official Comment to §2315 at cmt. 2); *see also, Visual Commc'ns, Inc. v. Konica Minolta Bus. Solutions, USA, Inc.*, 611 F.Supp.2d 465, 471 (E.D. Pa. 2009).

Morello argues Kenco sold the forklift with "reason to know that the forklift would be used as it was when [he] was injured," Jet Plastica "relied on the skill and judgment of [Kenco] to select and furnish a forklift *that was suitable for the application at issue*," and the forklift "was unfit for the particular purpose . . .." Am.Compl. at ¶¶76-78 (emphasis added). At oral argument, Morello articulated his implied warranty for particular purpose claim as Jet Plastica's purchase of the forklift "to use in [its] warehouse." T. at 86-87.

We find Morello's argument conflates this argument with his "merchantability" argument. *See Visual Commc'ns*, 611 F.Supp. 2d at 471. A safe, defect-free forklift goes to its "ordinary purpose" not its "particular purpose."

---

there is unless excluded or modified under section 2316 (relating to exclusion or modification of warranties) an implied warranty that the goods shall be fit for such purpose.

13 Pa.C.S.A. §2315.

## III.    CONCLUSION

After considering the parties' substantial briefing and oral argument, we grant summary judgment in the accompanying order in favor of Kenco on Morello's negligence claim (Count I), strict liability under Restatement (Second) of Torts §402B (Count III), "Liability Under Restatement (Torts) §392" (Count IV), breach of express warranty (Count V), and breach of implied warranty and fitness for a particular purpose (Count VII).   We deny Kenco's motion, subject to review of admissibility of expert testimony, as to Morello's strict liability claim under §402A (Count II) and breach of implied warranty of merchantability (Count VI).